UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO ARMAS, | Case No.: CV 16-07926-JDE |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff Arturo Armas ("Plaintiff") filed a complaint on October 25, 2016 seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). The parties filed consents to proceed before the undersigned Magistrate Judge. (Dkt. Nos. 11, 16.) Consistent with the Order Re: Procedures in Social Security Appeal (Dkt. No.

---

[1] Nancy A. Berryhill is now Acting Commissioner of Social Security ("Commissioner" or "Defendant") and is substituted in as defendant. See 42 U.S.C. 205(g).

9), the parties filed a Joint Stipulation addressing their respective positions. (Dkt. No. 18 ("Jt. Stip.").) The Court has taken the Joint Stipulation under submission without oral argument and as such, this matter is now ready for decision.

## II.

## LEGAL STANDARD

### A. <u>Standard of Review</u>

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision denying benefits to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Gutierrez v. Comm'r of Soc. Sec.</u>, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations and internal punctuation omitted). The standard of review of a decision by an Administrative Law Judge ("ALJ") is "highly deferential." <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1002 (9th Cir. 2015) (citation omitted). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration ("SSA") for further proceedings. <u>Id.</u>

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold

the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (court will uphold Commissioner's decision when evidence is susceptible to more than one rational interpretation). However, the Court may only review the reasons provided by the ALJ in the disability determination, and may not affirm the ALJ on a ground upon which the ALJ did not rely. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted); see also Orn, 495 F.3d at 630 (citation omitted).

Lastly, even if an ALJ erred, a reviewing court will still uphold the decision if the error was inconsequential to the ultimate non-disability determination, or where, despite the error, the ALJ's path "may reasonably be discerned," even if the ALJ explained the decision "with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations, internal punctuation omitted).

## B. Standard for Determining Disability Benefits

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110 (citing, inter alia, 20 C.F.R. §§ 404.1520(a), 416.920(a)). First, the ALJ considers whether the claimant currently performs "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine if the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months. Id. If so, the ALJ proceeds to a third step to determine if the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations. See 20 C.F.R. Pt. 404, Subpt. P, App. 1; see also Rounds, 807 F.3d at 1001. If the claimant's impairments do not meet or equal a "listed impairment," before

proceeding to the fourth step, the ALJ assesses the claimant's residual functional capacity ("RFC"), that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she performed it when she worked in the past, or as that same job is generally performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016) (citing, inter alia, SSR 82-61); see also 20 C.F.R. §§ 404.1560(b), 416.960(b).

If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See 20 C.F.R. §§ 404.1520(g), 416.920(g); Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Tackett, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1560(b)(3)); see also 20 C.F.R. § 416.960(b)(3).

The claimant generally bears the burden at each of steps one through four to show that she is disabled or that she meets the requirements to proceed to the next step; the claimant bears the ultimate burden to show that she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See 20 C.F.R. §§ 404.1560(c)(1)-(2), 416.960(c)(1)-(2); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

# III.

## BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was born on April 9, 1975. (Administrative Record ("AR") 70.) On December 7, 2012, Plaintiff filed a Title II application for DIB benefits and a Title XVI application for SSI benefits, claiming disability beginning January 17, 2011 in both applications. (AR 22, 165-71, 172-78.) After his applications were denied initially and upon reconsideration (AR 112-13, 140-41), Plaintiff requested an administrative hearing (AR 156-57). Plaintiff, represented by counsel, appeared and testified at the hearing before the ALJ below on April 20, 2015. (AR 67-79.)

On May 11, 2015, the ALJ returned an unfavorable decision. (AR 19-38.) At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 17, 2011. (AR 24.)  At step two, the ALJ determined that Plaintiff had the following severe impairments: morbid obesity; multilevel degenerative changes, lumbar spinal disc bulge at L4-L5, and moderate to severe foraminal stenosis; diabetes with neuropathy; and bipolar disorder. (AR 24.) At step three, the ALJ found that none of these impairments or combination of impairments met or equaled a listed impairment. (AR 28.)  Next, the ALJ found that Plaintiff had the RFC to perform light work, further limited as follows: (1) frequently climb, kneel, and crawl; (2) occasionally crouch; (3) not engage in concentrated walking on uneven terrain; and (4) perform only unskilled work. (AR 29.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (AR 31), and considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 32.) Based on the RFC and testimony of the Vocational Expert ("VE"), at step five, the ALJ found that Plaintiff could perform work as a marker (Dictionary of Occupational Titles ("DOT") 209.587-034) and fast food worker (DOT 311.472-

010). (Id.)  The ALJ concluded that Plaintiff was not disabled from the alleged onset date of January 17, 2011, through the date of the decision. (Id.)

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. (AR 14-15). On August 26, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (AR 1-6.) Plaintiff then commenced this action.

## IV.

## DISCUSSION

Plaintiff argues that the ALJ erred in: (1) evaluating the medical opinion evidence; (2) discounting Plaintiff's subjective symptom testimony; and (3) assessing Plaintiff's RFC. (See Jt. Stip. at 3.)

### 1. **Physicians' opinions**

Plaintiff argues that the ALJ erred in assessing the medical evidence in his file, specifically in the evaluation of medical opinions. (Jt. Stip. at 3.) Plaintiff contends that the ALJ erred in: (1) failing to consider medical evidence from Plaintiff's psychiatrist, Dr. Mirakhor; (2) assigning little weight to the opinion of the treating physician, Dr. Fouad; and (3) failing to appropriately consider the listings at step two. (Id.) The Court finds that the ALJ appropriately evaluated the medical evidence in the record.

### a. **Applicable Law**

Three types of doctors may offer opinions in Social Security cases: (1) those who treated the plaintiff; (2) those who examined but did not treat the plaintiff; and (3) those who did neither. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Treating doctors' opinions are generally given more weight than those of examining doctors, and examining doctors' opinions generally receive more weight than those of nonexamining doctors. Id. Treating doctors' opinions receive greater weight because they are employed to cure and have more opportunity to

know and observe patients as individuals. <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." <u>Id.</u> "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." <u>Id.</u> An "ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228 (9th Cir. 2009); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). To reject the un-contradicted opinion of a treating doctor, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005). Where a treating doctor's opinion is contradicted, the "ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." <u>Id.</u>

An ALJ need not recite "magic words" to reject a treating physician's opinion; the court may draw "specific and legitimate inferences" from the ALJ's opinion. <u>Magallanes</u>, 881 F.2d at 755. "[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998)).

### b. <u>Analysis</u>

#### i. <u>Dr. Mirakhor</u>

Plaintiff claims that the ALJ did not evaluate the opinion of Dr. Solomon Mirakhor, a psychiatrist, asserting that the "ALJ's decision does not even reference or refer to Dr. Mirakhor" claiming that the alleged failure "to mention a treating physician's opinion before making findings contrary to it" results in "harmful error." (Jt. Stip. at 4-5.) Plaintiff's argument about Dr. Mirakhor relies upon a faulty premise.

7

One of the first medical records cited by the ALJ in her decision is a consultation report by Dr. Mirakhor, dated July 6, 2011, in which Dr. Mirakhor diagnoses Plaintiff with a bipolar disorder. (AR 24, citing AR 437.) The ALJ also cites in her decision psychiatric consultation reports by Dr. Mirakhor dated January 26, 2012, August 30, 2012, and February 4, 2013. (AR 24-26, citing AR 431-436.) The ALJ refers to Dr. Mirakhor as the "physician" who conducted the "psychiatric consultation" in the decision, and the underlying reports all refer expressly to Dr. Mirakhor. Further, at the hearing, based on the indication of "bipolar disorder," the ALJ questioned Plaintiff about his bipolar disorder and about his sessions with his psychiatrist. (AR 73, 74.)

During her disability analysis, the ALJ included bipolar disorder among the severe impairments experienced by Plaintiff (AR 24); however, the ALJ found that the severity of Plaintiff's mental impairment did not meet or medically equal a listed impairment. (AR 28.) Referring to Listing 12.04, which addresses "Affective Disorders," including bipolar disorder, 20 C.F.R. Pt. 404, Subpt. P, App. I, §12.04(A)(3), the ALJ found that the impairment did not meet the listing because it failed to reach the standard of Paragraph B of 12.04, which requires at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or page; or (4) repeated episodes of decompensation, each of extended duration. A "marked" limitations is one that is "more than moderate but less than extreme" and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Rule 12.00(C).

The ALJ explained:

> In activities of daily living, the [Plaintiff] has mild restriction. The [Plaintiff] testified that he is able to care for his four children. In social functioning, the [Plaintiff] has mild difficulties. There are no frequent reports in the file of the [Plaintiff]'s treatment providers having difficulty interacting with the [Plaintiff]. With regard to concentration, persistence, or pace, the [Plaintiff] has mild difficulties. There is no evidence in the file from the treatment notes showing that the [Plaintiff] has significant difficulty with concentration, persistence, and pace. As for episodes of decompensation, the [Plaintiff] has experienced no episodes of decompensation, which have been of extended duration. Because the [Plaintiff]'s medical impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

(AR 28.) Taking into account the diagnosis of bipolar disorder, the ALJ provided for a limitation to only unskilled work in her RFC assessment. (AR 31.)

As an initial matter, the Court finds that the ALJ did consider Dr. Mirakhor's opinion, having cited to and referenced his consultation reports, and incorporating Dr. Mirakhor's diagnosis of bipolar disorder into her findings.

Further, having reviewed the ALJ's reasoning and the record as a whole, the Court finds that the ALJ's decision with respect to Dr. Mirakhor's opinion is supported by substantial evidence. The record supports the ALJ's finding that Plaintiff had only mild limitations in activities of daily living.[2] As the ALJ noted, Plaintiff reported that he was "the soccer mom" and was the primary caretaker of his four children. (AR 70.) As to social functioning, the ALJ noted in her decision

_____

[2] The Court provides further discussion of Plaintiff's activities of daily living infra in its discussion of the ALJ's treatment of the subjective symptom testimony.

(AR 30) that treatment notes show that Plaintiff consistently had normal mood and affect and was active and alert. (AR 441, 459, 464, 467, 470, 473, 476, 479, 482, 485, 551, 553, 559.) Neither the decision nor the Joint Stipulation point to any medical evidence in the record to indicate that Plaintiff suffered any decompensation for extended periods of time, and the Court in its review of the record has found none. While the Plaintiff correctly notes (Jt. Stip. at 5) that Dr. Mirakhor found that Plaintiff suffered difficulties with concentration and focus (AR 433, 435, 437), the ALJ found that these difficulties were not significant. (AR 28.) Assuming, arguendo, that the ALJ had found that the Plaintiff's issues with concentration marked, standing alone this finding would be insufficient to meet the requirements of paragraph B for a 12.04 listing.

The ALJ's interpretation of the evidence was reasonable. See Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008). Moreover, even if the Court were to find that the evidence was susceptible to more than one rational interpretation, the ALJ's findings, if rational, must be upheld. Andrews, 53 F.3d at 1039-40. The ALJ did not commit legal error in evaluating Dr. Mirakhor's opinion.

### ii. Dr. Fouad

Dr. Fouad served as Plaintiff's treating physician since 2008. (AR 573.) In March 2015, he opined that Plaintiff should be limited to sitting no more than ten minutes at a time, standing no more than twenty minutes at a time, and could neither sit nor stand for a period longer than two hours in an eight-hour day. (AR 574.) Dr. Fouad concluded that Plaintiff would need to take breaks every forty minutes for at least ten minute periods, and, if Plaintiff worked full-time, Plaintiff would be absent from work more than four days per month. (AR 574, 576.)

After crediting the opinion of state agency consultants who found Plaintiff was not disabled and found his symptom testimony was not "substantiated by the objective medical evidence alone," the ALJ found Dr. Fouad's March 2015

opinion regarding Plaintiff's functional capacity carried "little weight" because: (1) "Dr. Fouad's treatment records do not show the types of serious abnormalities and symptoms that would be expected if the [Plaintiff's] limitations were as severe as now opined by Dr. Fouad"; (2) Dr. Fouad "did not previously report [Plaintiff] to be disabled or unable to work permanently in his treatment;" (3) another doctor, Dr. Zeman, "stated that Plaintiff could return to work with no restrictions"; (4) only "once did Dr. Fouad keep [Plaintiff] off work for two weeks while a foot ulcer healed"; (5) "Dr. Fouad is not an orthopedic or mental health specialist"; and (6) it appeared that Dr. Fouad had not seen Plaintiff "in the last year and a half raising issues as to the reliability of Dr. Fouad's assessment." (AR 31.)

In further support of these conclusions, the ALJ referred to the facts that, as she had set forth in detail earlier in the decision, when Dr. Fouad examined Plaintiff in April, June, and July 2012, his examination was unremarkable and he noted that Plaintiff had normal gait and station. (AR 524, 527, 529.) While Dr. Fouad did find in October 2012 that Plaintiff suffered from antalgic gait resulting from an ulcer on his left foot (AR 513) and ordered that Plaintiff take two weeks off from work (AR 515), Dr. Fouad subsequently found that Plaintiff had normal stance and gait in July 2013 (AR 511), October 2013 (AR 509) and the physical examinations were unremarkable as they had been previously. In her decision, the ALJ noted the inconsistencies between Dr. Fouad's assessment in 2015 with the treatment notes Dr. Fouad had provided throughout 2012 and 2013. (AR 31.)

In addition to the lack of support of Dr. Fouad's opinion in his own medical records and prior course of treatment, the opinion of Dr. Zeman, an examining physician referred to Plaintiff by Dr. Fouad, found in October 2011 and in June 2012 that Plaintiff was able to work with no restrictions, which further supports the ALJ's treatment of Dr. Fouad's 2015 opinion. (AR 292, 298.)

Dr. Fouad's March 2015 opinion is contradicted by treating physician Dr. Zeman's opinion from 2011 and 2012, the state agency reviewing consulting physician's opinions, the medical records, and Dr. Fouad's own treatment notes and course of treatment. The Court finds that ALJ's decision to afford "little weight" Dr. Fouad's March 2015 opinion is supported specific and legitimate reasons that are supported by substantial evidence.

### iii. The Listings

Plaintiff also asserts that the ALJ erred at step three in "fail[ing] to consider any of the physical listings and fail[ing] to consider the impact of [Plaintiff's] mental and physical impairments in conglomerate," arguing that the ALJ was "required to take into account the combined effect of a disability claimant's impairments when looking at potential listing level impairments, and arguing that the ALJ must discuss evidence of equivalency when presented with such evidence by a claimant. (Jt. Stip. at 5.) The Commissioner does not appear to have responded to these arguments in the Joint Statement.

In her decision, the ALJ stated that "after reviewing all of the documentary evidence and testimony of record," she concluded that Plaintiff's "impairments do not meet or equal <u>any</u> of the criteria set for in <u>any</u> of the listed impairments set forth in Appendix 1, Subpart P, Regulations No. 4." (AR 28 (emphasis added).) The ALJ further stated in her listing analysis that she considered "an impairment or combination of impairments" in her listing assessment. (<u>Id.</u>) Thus, the record does reflect that the ALJ considered both physical and mental impairments and listings, both singularly and in combination.

Plaintiff also argues that the ALJ failed to discuss Plaintiff's assertion that one or more conditions were equivalent to the listings, arguing specifically that the ALJ "did not incorporate findings on examination regarding [Plaintiff's] cellulitis into step two," further arguing that Listing 8.04, regarding "chronic infections of

the skin or mucous membranes . . ." should have been considered.[3] (Jt. Stip. at 5-6.) However, when discussing the Listings, the ALJ expressly referenced the opinions of the state agency medical consultants who reached the same conclusions as the ALJ regarding the Listings. "The signed written opinion of the state agency physician was a sufficient basis for the ALJ's equivalence determination, and the live testimony of a medical expert was not required." Crane v. Barnhart, 224 Fed. Appx. 574, 578 (9th Cir. 2007). Among other listings expressly considered by the state agency consultants was Listing 8.04, Chronic Infections of Skin or Mucous Membranes. (AR 90, 106, 121, 134.) In each instance, after considering Listing 8.04, the state agency consultants determined Plaintiff was not disabled. (AR 94, 110, 125, 138.) Thus, contrary to Plaintiff's assertion that it "was error for the ALJ not to consider" Listing 8.04 (Jt. Stip. at 6), in fact, the ALJ expressly referenced the state agency consultants' opinions -- opinions which considered and rejected equivalency with Listing 8.04, and which are a proper basis for an ALJ's equivalence determination.

The ALJ did not err in her Listing analysis.[4]

## 2. **Adverse Credibility Determination**

Plaintiff argues that the ALJ's credibility determination was not properly supported. (Jt. Stip. at 12.) The Court finds that the ALJ's evaluation of the subjective symptom testimony was appropriate.

---

[3] At the hearing, Plaintiff testified that he used to suffer from frequent foot wounds, until he learned how to conduct proper care and treatment at home. (AR 72.)

[4] Plaintiff asserts that the ALJ erred in not including Plaintiff's prior MRSA infection as part of his RFC, asserting that with such a "highly contagious" impairment, his ability to work "would be compromised." (Jt. Stip. at 6-7.) However, Plaintiff's medical records reveal that his MRSA infection had "been addressed" as of May 2014 and it did not prevent one of his treating physicians from suggesting that Plaintiff could "benefit from a gym membership." (AR 570.) The ALJ did not err.

### a. __Applicable Law__

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony is not credible. See <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing 42 U.S.C. § 423(d)(5)(A)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." <u>Treichler</u>, at 1102. As long as the plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not require the degree of pain to be corroborated by objective medical evidence. See <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir. 1991). Second, if the claimant has produced such evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "'specific, clear and convincing reasons' for rejecting the claimant's testimony regarding the severity of the claimant's symptoms.'" <u>Treichler</u>, 775 F.3d at 1102 (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996)).

An ALJ's assessment of credibility should normally be given great weight, and where an ALJ's credibility finding is supported by substantial evidence, a reviewing court may not engage in second-guessing. See <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985). Furthermore, "[a]n ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . .." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)).

When analyzing a claimant's subjective symptoms, the ALJ may consider factors relevant to the symptoms such as, inter alia, the claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment, other than medication, that the claimant receives

or has received for relief of pain or other symptoms; or any other measures that the claimant has used to relieve pain or symptoms. <u>See</u> 20 C.F.R. § 404.1529.

The ALJ may employ "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms, testimony that appears less than candid, or an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, in assessing a claimant's credibility. <u>See</u> <u>Tommasetti</u>, 533 F.3d at 1039 (citations omitted); <u>see also</u> <u>Thomas</u>, 278 F.3d at 958-59 (in analyzing credibility of claimant's pain complaints, ALJ may consider reputation for truthfulness, inconsistencies between testimony and conduct, work record); <u>Fair</u>, 885 F.2d at 603 (in analyzing claimant's pain, ALJ may consider evidence of daily activities, inadequately-explained failure to seek treatment or follow prescribed treatment). In addition, the ALJ may consider testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms about which the claimant complains. <u>See</u> <u>Thomas</u>, 278 F.3d at 958-59 (citing <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)).

However, once a claimant presents medical evidence of an underlying impairment, the ALJ may not discredit testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. <u>Lingenfelter</u>, 504 F.3d at 1035-36; <u>see also</u> <u>Bunnell</u>, 947 F.2d at 346-47. Nevertheless, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect. <u>See</u> SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory

policy, as our regulations do not use this term." <u>Id.</u> Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. <u>Id.</u>; <u>see also</u> <u>Trevizo v. Berryhill</u>, 862 F.3d 987, 1000 at n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10 (Mar. 16, 2016).

### b. <u>Analysis</u>

The ALJ noted that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (AR 30.) To support her conclusion, the ALJ offered the following analysis:

> Despite [the fact that Plaintiff] testified to extreme physical limitations, the treatment notes reflect minimal findings on physical examination. The claimant consistently had normal gait and required no assistive device. [Plaintiff] had been prescribed pain medications for some years; however, [Plaintiff] repeatedly reported that his medications were helpful in reducing his pain levels. While [Plaintiff] testified to extreme side effects to medications, no such reported to physicians are present in the record. This inconsistency renders the [Plaintiff]'s testimony less than fully credible. The record reflects daily activities of the [Plaintiff] that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Plaintiff] reported going to Disneyland for a full day and reported working at a

warehouse where he was on his feet all day. While that work activity may not have constituted disqualifying substantial gainful activity, it does suggest that the [Plaintiff] has significant abilities inconsistent with total disability. [Plaintiff] also reported being a "stay-at-home" dad. [Plaintiff] has four children and caring for children can be quite demanding both physically and emotionally. As for [Plaintiff]'s mental symptoms, the treatment notes consistently state that the [Plaintiff] had normal mood and affect and was active and alert. [Plaintiff] had been told that he needed to be on a mood stabilizer to control his alleged bipolar symptoms, but he never consistently complied with this advice, noting in October 2013 that [Plaintiff] was not taking any medication for his bipolar disorder.

(AR 30) (citations omitted.)

The Court finds that the ALJ properly engaged in the required two-step analysis. First, she determined that Plaintiff had presented objective medical evidence of an underlying impairment that could reasonably be expected to produce her alleged symptoms. (Id.) She then found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely credible." (Id.) The ALJ provided several specific, clear, and convincing reasons drawn directly from the record to support her rationale.

First, the ALJ noted that the subjective symptom testimony was largely at odds with the treatment notes, wherein, for physical symptoms, Plaintiff is routinely, though not always, found to have normal gait without need for assistive devices and for mental symptoms, the treatment notes "consistently state that [Plaintiff] had normal mood and affect and was active and alert." (AR 30 citing AR 441, 459, 464, 467, 470, 473, 476, 479, 482, 485, 551, 553, 559.) Further, the subjective symptom testimony also appears at odds with the opinion of examining

physician Dr. Zeman, who, as discussed above, found in October 2011 and in June 2012 that Plaintiff was able to work with no restrictions. (AR 292, 298.) Although a lack of objective medical evidence cannot be the sole reason for rejecting a claimant's testimony, it can be one of several factors used in evaluating the credibility of Plaintiff's subjective complaints. <u>Rollins</u>, 261 F.3d at 856-57.

Second, the ALJ noted Plaintiff often reported prescribed pain medication was helpful, at least when he took it. (AR at 30.) "Impairments that can be controlled effectively with medication are not disabling." <u>See</u> <u>Warre v. Comm'r of the Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006). In his portion of the Joint Statement, Plaintiff takes issue with the ALJ's conclusion, citing to portions of the record which Plaintiff asserts shows that pain medication was not working. (Jt. Stip. at 13-14, citing AR 288, 294-295, 510, 549, 569.) However, all of the citations by Plaintiff, when the full visit record is reviewed, involve situations where Plaintiff either was not taking his medication, recounted that the medication was helping, or showed that the professional felt the pain was not sufficient to prevent Plaintiff from working or exercising. (<u>See</u> AR 288-292 (reflecting visit on March 29, 2012, indicating Plaintiff reported "medications … helped some but not that much" concluding "<u>May return to work as of [that date] with no restrictions</u>") 294-98 (reflecting visit on Oct. 21, 2011 with the notation "He has not been taking medications for the pain" and concluding "<u>May return to work as of [that date] with no restrictions</u>" and "<u>would like him back at work before knowing [where] to go with this case</u>"); 510 (noting Plaintiff "currently on no medications"); 549 (recounting "<u>Meds continue to benefit with no significant side effects. Patient consistently reports meds provide reduction in pain levels</u>. . ..."); 569-70 (pain medications "stable," but epidural steroid injection "denied," provider noting Plaintiff "<u>may benefit from a gym membership</u>") (emphasis added).) The Court finds that the ALJ fairly summarized the medical records

relating to pain medication in finding they were not consistent with Plaintiff's subjective symptom testimony.

Third, ALJ noted that Plaintiff testified about "extreme side effects to medications," but the ALJ found that the record did not reveal such complaints to physicians, which the ALJ found rendered Plaintiff's testimony about side effects "less than fully credible." (AR 30.) In fact, as noted above, Plaintiff reported to a medical provider that he received benefit from his medication "with no significant side effects." (AR 549.) In the Joint Stipulation, Plaintiff notes the ALJ's finding in this regard, but does not appear to dispute the factual underpinnings of the finding. (Jt. Stip. at 14.) Defendant notes that, under 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4), the agency "will consider whether there are any inconsistencies in the evidence and the extent to which there are conflicts between your statements and the rest of the evidence." (Jt. Stip. at 17.)

Fourth, the ALJ found that Plaintiff's daily activities are not consistent with his subjective reports of disabling symptoms. (AR 30.) The record reflecting Plaintiff's daily activities supports the ALJ's finding. With respect to daily activities, the ALJ initially noted the evidence that Plaintiff had spent a full day at Disneyland and had worked at a warehouse where he was on his feet all day during the time period he claimed to be disabled, which, while not per se disqualifying, are inconsistent with claims of a total disability. (Id.) Plaintiff argues that his time at Disneyland and working resulted in disabling pain, which "underscores his credibility." (Jt. Stip. at 17.) The Court finds that the ALJ properly considered the evidence of the full-day at Disneyland and the full day of working at a warehouse as evidence inconsistent with Plaintiff's claims of total disability, but not determinative of the issue in and of themselves.

In addition to the Disneyland day trip and warehouse work, the ALJ also referenced Plaintiff's testimony that he was a "stay at home" dad caring for his

four children, a task that "can be quite demanding both physically and emotionally." (AR 30.) At the hearing, the ALJ asked Plaintiff about his duties as a caretaker of his four children (and a fifth child, a nephew), who ranged in age from 7 to 15. Plaintiff testified that he took the five children to school, made them lunches, went shopping with the children choosing the items and unloading the van, and tried "to put a quick meal together." (AR 70, 77.) Plaintiff testified that his wife and mother live in the home but both work outside the home, describing himself as "the soccer mom." (AR 70.)

In determining a plaintiff's credibility, an ALJ may consider whether a plaintiff's daily activities are consistent with the asserted symptoms. See Thomas v. Barnhart, 278 F.3d 947 958-59 (9th Cir. 2002) (citation omitted); see also SSR 96-7p, 1996 SSR WL 374186, at *3 (stating that the "adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: ... [t]he individual's daily activities"). While the fact that a plaintiff can participate in various daily activities does not necessarily detract from the plaintiff's credibility as to her specific limitations or overall disability, "a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferrable work skills." Elizondo v. Astrue, 2010 WL 3432261, at *5 (E.D. Cal. Aug. 31, 2010). "Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting." Id. (citing Orn, 495 F.3d at 639; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); and Thomas, 278 F.3d at 959). "A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse finding when performed for a

substantial portion of the day." Elizondo, 2010 WL 3432261, at *5 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008); Burch, 400 F.3d at 680-81; Thomas, 278 F.3d at 959; Morgan, 169 F.3d at 600; and Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)); see also Rollins, 261 F.3d at 857 (the ability to care for children may undermine complaints of severe limitations); Morgan, 169 F.3d at 600 (same, where claimant's activities included occasional care for a friend's child). Because "'many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication' the record should show how childcare responsibilities conflict with the reported limitations." Trevizo, 862 F.3d at 1004 (quoting Fair, 885 F.2d at 603).

The Court finds that the ALJ properly considered daily activities, including the full-day Disneyland trip and Plaintiff's limited work at a warehouse, as well as Plaintiff's description of his tasks as a "soccer mom," the sole adult at home during the day caring for five children ranging in ages from 7-15, as the testimony bore on Plaintiff's subjective symptom testimony. This evidence, in combination, is not consistent with Plaintiff's subjective symptom testimony and the activities are transferrable to "light work" tasks. Further, Plaintiff's description of his daily activities as a "soccer mom" – the sole adult caregiver during the day to his four children and his nephew's child -- is a telling and descriptive phrase consistent with significant daily activity and supportive of the ALJ's finding that such activities can be "quite demanding, both physically and mentally." (AR 30.)

In sum, the ALJ's conclusion that Plaintiff's subjective symptom testimony was not supported by the medical records, was contradicted by his statements about the efficacy of medication, was not supported by records relating to alleged side effects to medication, and was not supported by his daily activities, provides specific, clear and convincing reasons to discount Plaintiff's testimony.

### 3. **RFC Assessment**

Plaintiff contends that the ALJ's RFC was infected by the errors in the evaluation of the medical opinion evidence and that the ALJ should have sought a consultative examination. (Jt. Stip. at 18.) The Court finds that the ALJ's RFC assessment was supported by substantial evidence in the medical record.

### a. **Applicable Law**

A claimant's RFC is "the most [he] can still do" despite the impairments and related symptoms that "may cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss, 427 F.3d at 1217. The ALJ must consider all the medical opinions "together with the rest of the relevant evidence [on record]." 20 C.F.R § 202.1527(b); see also § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record.").

In assessing an RFC, the ALJ considers those limitations supported by the record and need not take into account properly rejected evidence or subjective complaints. See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant]'s subjective complaints"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC findings from physician opinions that were "permissibly discounted"). An ALJ may consider findings by state-agency medical consultants as opinion evidence. 20 C.F.R. § 404.1527(e).

### b. **Analysis**

Plaintiff's arguments related to ALJ's treatment of the physicians' opinions are addressed in Section IV(1)(b) above and those findings are incorporated herein.

In addition, Plaintiff claims that the ALJ did not "fully account for [Plaintiff's] foot ulcers" (Jt. Stip. at 19) as a part of the RFC assessment; however, the ALJ explicitly noted Plaintiff's "chronic foot wounds" in her RFC discussion, and further noted that Plaintiff testified at the hearing that "his chronic foot wounds have abated now that he has learned techniques for better care." (AR 29.) Similarly, Plaintiff asserts that the ALJ "did not fully contemplate the extent of [Plaintiff's] mental illness" in assessing his RFC (Jt. Stip. at 19), but in fact, the ALJ spent eight paragraphs in her decision discussing Plaintiff's mental limitations, concluding by finding that the RFC "assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 28-29.) Thus, Plaintiff's specific objections to the RFC are unsupported and contrary to the record.

Plaintiff also argues that the ALJ erred by failing to request a consultative examination. (Jt. Stip. at 19.) One of the means available to the ALJ to supplement an inadequate medical record is to order a consultative examination. See 20 C.F.R. §§ 404.1519, 416.919. The "Commissioner has broad latitude in ordering a consultative examination." Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (internal citations and quotations omitted). The SSA may purchase a consultative examination when the evidence as a whole is not sufficient to support a decision on a claim. 20 C.F.R. § 416.919a(b). Where "the record is devoid of evidence to support a finding either for or against the claimant on a determinative issue, further development of the record, via consultation with a medical expert, is mandatory." Ludwig v. Halter, 5 Fed. Appx. 689, 691 (9th Cir. 2001).

Here, the ALJ did not find the evidence was insufficient to support her decision, and Plaintiff fails to specifically identify any determinative issue upon which the record was devoid of evidence to support the ALJ's finding. Thus, a consultative examination was not required.

Substantial evidence supports the ALJ's RFC assessment and a consultative examination was not required.

## V.

## CONCLUSION AND ORDER

Consistent with the foregoing, IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and Judgment on the counsel for both parties.

DATED:   September 14, 2017

JOHN D. EARLY
United States Magistrate Judge